## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

DANIEL ELDON KENNEMORE,     )
     )
     Plaintiff,     )
     )
     v.     )     No. 4:22-cv-00180-PLC
     )
STATE OF MISSOURI DEPARTMENT     )
OF MENTAL HEALTH, et al.,     )
     )
     Defendants.     )

### MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Daniel Eldon Kennemore for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 4). Having reviewed the motion, the Court finds that it should be granted. *See* 28 U.S.C. § 1915(a)(1). Additionally, for the reasons discussed below, the Court will dismiss this action without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## Background

Plaintiff is a self-represented litigant who is currently committed to the Southeast Missouri Mental Health Center in Farmington, Missouri, where he is undergoing Sexual Offender Rehabilitation Treatment Services (SORTS). On August 7, 1995, he was convicted on three counts of sodomy and sentenced to three concurrent ten-year terms of imprisonment in the Missouri Department of Corrections. *State of Missouri v. Kennemore*, No. 11R019300463-01 (11th Jud. Cir., St. Charles County). Following the expiration of his sentences, the State of Missouri sought to

commit plaintiff as a sexually violent predator (SVP). *In the Matter of the Care and Treatment of Daniel Kennemore*, No. 03PR12486 (11th Jud. Cir., St. Charles County). He was committed on April 4, 2005. Plaintiff filed an appeal to the Missouri Court of Appeals, but voluntarily dismissed the appeal on March 3, 2006. *In the Matter of Daniel Kennemore*, No. ED86696 (Mo. App. 2006).

Since he has been committed, plaintiff has filed four petitions for writ of habeas corpus in this Court, which have all been unsuccessful.[1] Plaintiff has also filed eight prior civil actions pursuant to 42 U.S.C. § 1983.[2] All of these civil actions were either dismissed under 28 U.S.C. § 1915(e), or pursuant to plaintiff's motion for voluntary dismissal.

## The Complaint and Subsequent Filings

Plaintiff initiated the instant action on February 14, 2022, by filing a complaint pursuant to 42 U.S.C. § 1983. (Docket No. 1). The complaint is typewritten and not on a Court-provided form. In it, plaintiff names seven separate defendants: (1) the State of Missouri Department of Mental Health; (2) Director Valerie Huhn; (3) Chief Medical Director Angeline Stanislaus; (4) SORTS Chief Operating Officer Denise Hacker; (5) Medical Director Stacy Neff; (6) Dr. Jay Englehart; and (7) Dr. Sekhor Vangala. Defendants are sued in both their official and individual capacities.

---

[1] *See Kennemore v. Blake*, No. 4:06-cv-1016-CEJ (E.D. Mo. Aug. 29, 2006) (petition dismissed pursuant to Fed. R. Civ. P. 41(b)); *Kennemore v. Blake*, No. 4:08-cv-173-DJS (E.D. Mo. Feb. 24, 2009) (petition dismissed because petitioner was no longer in custody for the conviction which he was challenging); *Kennemore v. Lawson*, No. 4:19-cv-1394-HEA (E.D. Mo. June 11, 2019) (petition dismissed due to failure to exhaust state remedies); and *Kennemore v. Hacker*, No. 4:21-cv-231-SRW (E.D. Mo. Sept. 28, 2021) (petition dismissed as time-barred).

[2] *See Kennemore v. Wilbun, et al.*, No. 4:00-cv-812-CEJ (E.D. Mo. Sept. 26, 2000) (complaint dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)); *Kennemore v. Bush, et al.*, No. 4:04-cv-1506-CAS (E.D. Mo. Dec. 30, 2004) (complaint dismissed as frivolous and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)); *Kennemore v. Bush, et al.*, No. 4:05-cv-381-CAS (E.D. Mo. June 6, 2005) (complaint dismissed as frivolous and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)); *Kennemore v. Bush*, No. 4:06-cv-173-FRB (E.D. Mo. Apr. 12, 2006) (complaint dismissed as frivolous and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)); *Kennemore v. Blake*, No. 4:07-278-RWS (E.D. Mo. Apr. 12, 2007) (complaint dismissed as frivolous and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)); *Kennemore v. Engelhart, et al.*, No. 4:07-cv-555-HEA (E.D. Mo. Mar. 26, 2008) (complaint dismissed pursuant to plaintiff's motion for voluntary dismissal); *Kennemore v. Blake*, No. 4:07-cv-2028-ERW (E.D. Mo. Jan. 8, 2008) (complaint dismissed as frivolous and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)); and *Kennemore v. Engelhart, et al.*, No. 4:16-cv-164-CEJ (E.D. Mo. Feb. 26, 2016) (complaint dismissed pursuant to plaintiff's motion for voluntary dismissal).

The central argument in plaintiff's complaint is that he has been forcibly medicated against his religious beliefs.

In his "Statement of Claim," plaintiff asserts that on April 16, 1998, while he was in prison, "the Holy Spirit revealed to [him] that [he] had been framed with sex offenses by the Freemasons who used Witchcraft/Sorcery on [him] by putting a lust/love spell/curse on [him]." (Docket No. 1 at 3). On April 25, 1998, the same "revelation" again occurred to him, this time telling him that "it had happened to others as well."

In 2000, plaintiff states that he was paroled and went home to Sardis, Mississippi. While there, he told his parole officer "what had been revealed to [him]," and told the officer about "the Freemasons." Due to this, the parole officer "stated that [plaintiff] was dangerous," and had him "sent to a mental hospital before returning [him] to prison in Missouri." Plaintiff states that he finished his ten-year sentence in Farmington, and "was then targeted for the SVP program." He believes that this occurred "to silence [him] for telling what was revealed about the Freemasons." Ultimately, plaintiff was committed.

When plaintiff arrived at SORTS, he states that he went to the library and found twenty-six "books of occult/pagan research information that showed that the Freemasons, Jews, and physicians were practicing witchcraft." Plaintiff states that he showed his research "to many residents and staff," whereupon "Dr. Englehart force medicated [him]." He alleges that Englehart did this to "silence [him] from exercising free speech and to protect [Englehart] and…a government that is secretly run by witches [who] are Sun God/Satan worshippers." Plaintiff further states that this occurred in 2006-2007, and that Englehart used Risperdal. He states that he feared for his life because he gained forty pounds. Plaintiff eventually "recanted [his] words about what [he] knew out of fear and then Dr. Englehart changed the medication/drug to Abilify."

4

Plaintiff states that he "lived in fear of Dr. Englehart until 2020 when [he] was told [Englehart] was sick with cancer, retired or dead." (Docket No. 1 at 4). At that point, plaintiff "decided to stop the drug Abilify and all other drugs because in [his] belief system they are sorcery." For ten months, plaintiff "stopped all drugs," with the exception of "being force drugged again by Dr. Vangala." Plaintiff believes that Dr. Vangala wanted to continue Dr. Englehart's diagnosis of mental illness, and "to discredit [plaintiff]" about "what was revealed about [Vangala] as a sorcerer/physician." However, after ten months, plaintiff "felt [he] had no choice but to start taking new medications to counter act some of the side effects the original forced medication had caused."

According to plaintiff, "[b]oth doctors/physicians/sorcerers were putting a lust/love spell on [him] each time they force drugged [him]." He states that his journal, which he has kept for twenty-eight years, supports this contention. In particular, plaintiff documented a "team meeting [on] December 7, 2020," when Dr. Vangala had two interns with him. Both the interns were female, and "dressed in all black clothes." Because of this, he asserts that "they were both witches," and that they put "a curse on [him]." Thereafter, plaintiff "was written up for exposing [himself] on December 30, 2020[,] on the [witch's] full moon."

Plaintiff notes that he filed a petition for writ of habeas corpus against defendant Hacker in 2021, and that "she retaliated by starting force med/drugs procedures again while in court." He states that Hacker forced medications on him to "intimidate" him "and to discredit the experiences [he has] had that prove our government is secretly set up under the Sun God/Satan by these witches who run our court system[,] the Freemasons, the Jews, and physicians." Plaintiff believes this shows a pattern of abuse "to stop the truth from coming out," in violation of the First Amendment.

5

With regard to Director Huhn, plaintiff asserts that "[s]he is legally responsible for the overall operation of the Department of Mental Health," including the facility where he is confined. (Docket No. 1 at 2).

As to Chief Medical Director Stanislaus, plaintiff claims that "[s]he made the final decision to have plaintiff" forcibly medicated, which is "against his religious beliefs and to establish her government religious beliefs in pharmacia/sorcery."

Regarding Dr. Neff, plaintiff states that "[s]he was the chair person for the government[']s religious belief system under the Sun God Apollo that exercised her government religious beliefs upon [him] to help discredit" him and "to silence" him.

In reference to Dr. Englehart, plaintiff alleges that Englehart retaliated against plaintiff by force drugging him after he showed "residents and staff occult documentation found in the SORTS library books and magazines that the Freemasons, Jews, and physicians like Dr. Englehart…practiced witchcraft under the Sun God/Satan/Apollo." He further states that he "suffered physically and emotionally when" Dr. Englehart "threatened to make [him] live under a guardianship if [he] didn't cooperate with being force drugged." From 2006-2020, plaintiff states that Dr. Englehart "created much stress, anxiety and fear" in him.

Finally, with respect to Dr. Vangala, plaintiff states that Vangala "took his Hippocratic Oath to the Sun God/Apollo," and that Vangala has "used witchcraft/hypnosis on plaintiff to create the illusion that [he] is delusional after [he] told defendant Vangala that he was framed by the Freemasons, Jews and physicians."

Attached to the complaint are seventy-one pages of exhibits, which the Court has reviewed and will treat as part of the pleadings.[3] (Docket No. 1-2; Docket No. 1-3). These exhibits consist of motions filed in plaintiff's habeas case; grievances; letters to various courts, judges, attorneys, family members, the ACLU, the Missouri State Public Defender, the St. Louis Post Dispatch, the Liberty Institute, Denise Hacker, and the Missouri Department of Constituent Services; motions filed in other state cases; letters from law firms declining representation; SORTS Team Requests; a magazine article about the Druids; and an essay written by plaintiff regarding who is "really responsible for sex offenders." Most of the exhibits pertain to plaintiff's belief – outlined in the "Statement of Claim" – that the Holy Spirit revealed to him that Dr. Englehart and Dr. Vangala are sorcerers, and that they have put "lust spells/curses" on him to create the illusion of a chemical imbalance, and to wrongfully show that he has committed a sex offense. In addition, he argues that "this system" is actually an Egyptian system founded by Freemasons, Jews, and physicians, which is run for their own religious beliefs.

Plaintiff seeks an injunction to stop defendants from "forcing their religious Sun God/Satan beliefs upon [him] by forcing their drugs/sorcery upon [him] to change [his] religious beliefs." (Docket No. 1 at 5). He also seeks $5 million in compensatory damages from each defendant, and $1 million in punitive damages from each defendant.

On February 15, 2022, plaintiff submitted a grievance dated January 25, 2022. (Docket No. 7). In the grievance, he alleges that he was "being retaliated against for exercising [his] religious beliefs" and that "this government is run by the Freemasons, Jews, and physicians who worship

---

[3] *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). *See also Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (stating that "while ordinarily, only the facts alleged in the complaint are considered in determining whether it states a claim, materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint"); and *Pratt v. Corrections Corp. of America*, 124 Fed. Appx. 465, 466 (8th Cir. 2005) (explaining that "the district court was required to consider the allegations not only in [plaintiff's] pro se complaint, but also in his motion to amend, his response to defendants' motion to dismiss, and the attachments to those pleadings").

the Sun God/Satan." (Docket No. 7 at 1). More specifically, plaintiff asserts that the state was retaliating against him by extending "the involuntary medication order to intimidate and slander [him]." By way of response, the committee states that "the clinical due process hearing is required every 6 months regardless of [plaintiff's] interactions with the court system," and that the "facility feels like the enforced medication is advantageous to [plaintiff's] therapy." (Docket No. 7 at 2).

On February 24, 2022, plaintiff filed a Court-provided 42 U.S.C. § 1983 complaint form. (Docket No. 8). It is unclear whether he intends this as an amended complaint, replacing his original complaint, or as a supplement. In any event, this second complaint identifies the same defendants as the first, and once again indicates that all are sued in both their official and individual capacities. (Docket No. 8 at 2-4).

In the "Statement of Claim," plaintiff states that he was arrested in Memphis, Tennessee in 1993, "by persons that [he] learned later were wiccans/witches of the Sun God/Baal/Apollo/Ra/Satan/Lucifer religious belief." (Docket No. 8 at 4). He asserts that he was denied his right to bond out after the bond was paid, and extradited to St. Charles, Missouri even though "no extradition warrant was found." Plaintiff claims that he "was held without a warrant or charges for over 72 [hours]," and that when he complained, he "was beaten and tortured twice by the St. Charles guards." Further, he contends that after the beating, he "was falsely accused of assaulting the guards and falsely convicted."

Eventually, plaintiff pleaded guilty and went to prison for ten years. In 1998, he states that the "Hebrew God [Yahweh]" revealed to him that he "had been framed by the use of witchcraft by the Freemasons." Plaintiff states that he returned to Memphis where his charges were dismissed, and he was then paroled to Sardis, Mississippi, despite never attending the Missouri Sex Offender Program in prison. (Docket No. 8 at 4-5). When he told his parole officer about his revelation, he

was sent to "a mental hospital in Tupelo…and then returned to prison." (Docket No. 8 at 5). Upon completing his ten-year sentence, plaintiff asserts that he "was targeted as a[n] SVP to silence [him]" so that he "couldn't tell the public what the Lord revealed to [him] about witchcraft being used to create sex offenses." He was found "mentally unsound" and committed to SORTS, where he "researched the occult books and magazines and found that the Freemasons, Jews, and physicians were in 26 of the occult books as followers of the Sun God/Satan." When he told staff and residents, Dr. Englehart forcibly medicated him, which his "journal showed was actually a lust spell." In 2020, plaintiff alleges that Dr. Vangala "did the same thing to cover up the truth" and put a "curse" on him.

After plaintiff filed a federal habeas petition, he states that Chief Operating Officer Hacker and other SORTS staff members extended the forced "medication order to intimidate [him] and to continue the mentally ill false label to silence [him]." In particular, he accuses defendants Hacker, Huhn, Stanislaus, and Neff of extending the forced drugs "to silence [him] from exposing them as Satan worshippers/witches."

Plaintiff states that he has been illegally "locked up" for over twenty-eight years, and that he is seeking his release, the expungement of his records, and "to stop the force[d] drugs and sorcery." (Docket No. 8 at 5-6). He also requests $5 million in damages for lost wages, along with $1 million from each defendant in punitive damages. (Docket No. 8 at 6).

On April 11, 2022, plaintiff submitted a letter to the Court in which he included the "reply" from Shelby County, Tennessee, to his request for a "settlement." (Docket No. 13). In the settlement request to Shelby County, plaintiff asserts that he was framed and "locked up illegally." He also repeats his beliefs regarding "how the Freemasons, Jews, and physicians have set up the state and federal court system under the religion of the Sun God Apollo."

On April 18, 2022, plaintiff sent another letter to the Court, this one regarding the "reply" from St. Charles County to his "motions." (Docket No. 15). Attached to the letter are purported motions that he sent to the Circuit Court of St. Charles County. These include a motion to be released, his record expunged, and a fair monetary settlement made; a motion to vacate his civil commitment and order him released; and a motion to amend. According to plaintiff, the Clerk of the St. Charles County Court refused to send him copies of his motions, because they had already been sent, and advised him that his motion to be released had been denied, though he never received any "proof of that since [he] never received it."

### Consent to Jurisdiction by United States Magistrate Judge

The Court notes that on March 16, 2022, it received full consent to conduct any and all proceedings in this case, including trial and final entry of judgment, pursuant to 28 U.S.C. § 636(c)(1). (Docket No. 11).

### Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, alleging that defendants forcibly medicated him in violation of his First Amendment rights. Because he is proceeding in forma pauperis, the Court has reviewed his complaint and other filings under 28 U.S.C. § 1915. Based on this review, and for the reasons discussed below, the Court will dismiss this action without prejudice.

### A.  Claim Against Missouri Department of Mental Health

Plaintiff has named the Missouri Department of Mental Health as a defendant in this action. Because the claim is against a department of the State of Missouri, it is treated as being made against the state itself. This claim fails for two reasons.

10

First, 42 U.S.C. § 1983 "provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (explaining that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (explaining that "a state is not a person for purposes of a claim for money damages under § 1983"). As the State of Missouri is not a § 1983 "person," plaintiff is missing an essential element of a § 1983 claim. Therefore, it must be dismissed.

Second, plaintiff's claim against the State of Missouri is barred by the doctrine of sovereign immunity. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer sovereign immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment").

The immunity provided by the Eleventh Amendment bars suit against a state or its agencies for any kind of relief, not merely monetary damages. *Monroe v. Arkansas State Univ.*, 495 F.3d

591, 594 (8th Cir. 2007) (stating that district court erred in allowing plaintiff to proceed against state university for injunctive relief, and remanding matter to district court for dismissal).

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id*. The second exception is when a state waives its immunity to suit in federal court. *Id*. at 65. A state will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

The first exception is inapplicable because 42 U.S.C. § 1983 – under which this case arises – does not revoke a state's Eleventh Amendment immunity from suit in federal court. *See Will*, 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second exception is also inapplicable because the State of Missouri has not waived its immunity in this type of case. *See* RSMo § 537.600 (explaining that sovereign immunity is "in effect," and providing exceptions relating to the "negligent acts or omissions by public employees arising out of the operation of motor vehicles…within the course of their employment," and regarding "[i]njuries caused by the condition of a public entity's property").

In short, sovereign immunity prevents plaintiff from suing the State of Missouri for any type of relief, be it monetary or injunctive. Furthermore, he has not demonstrated that an exception

to sovereign immunity is present here. Therefore, for this reason as well, his claim against the Missouri Department of Mental Health must be dismissed.

**B. Official Capacity Claims**

Plaintiff has sued all defendants in their official capacities. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

In this case, defendants are alleged to be employed in various capacities by the State of Missouri. As such, the official capacity claims against them are treated as being made against the state itself, their employer.

To the extent that plaintiff is suing for monetary damages, the official capacity claims must be dismissed because the State of Missouri is not a "person" under 42 U.S.C. § 1983. *See Will*, 491 U.S. at 71 (explaining that "neither a State nor its officials acting in their official capacity are 'persons' under § 1983"); and *Kruger*, 820 F.3d at 301 (explaining that "a state is not a person for purposes of a claim for money damages under § 1983"). Likewise, a claim for monetary damages against a state official acting in an official capacity is barred by the Eleventh Amendment. *See*

*Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment").

To the extent that plaintiff seeks injunctive relief, he must demonstrate the liability of the State of Missouri for harming him. *See Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation "resulted from (1) an official…policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of the State of Missouri.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the [governmental] official who has final authority regarding such matters." *See Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a [governmental entity] should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the [governmental entity's] governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

14

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom."

In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8ᵗʰ Cir. 2013).

Finally, plaintiff can assert a liability claim against a governmental entity by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the governmental entity "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8ᵗʰ Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8ᵗʰ Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8ᵗʰ Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8ᵗʰ Cir. 2003). In this case, plaintiff has not presented any facts supporting the

proposition that the State of Missouri has harmed him due to an unconstitutional policy, custom, or failure to train.

First, plaintiff has not established the existence of an unconstitutional policy. While he has challenged the use of forced medications, he has presented absolutely no facts regarding the forced medication policy of the State of Missouri. Certainly, his assertions do not allow the Court to infer that such a policy is unconstitutional, either in its entirety or as applied to him. Rather than present allegations regarding a policy or the acts of policymakers, plaintiff's facts – such as they are – focus on the actions of individuals who he believes are medicating him for improper reasons.

Second, plaintiff has not demonstrated that he was harmed by an unconstitutional custom, as he has not shown the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the [State of Missouri's] employees," much less that policymakers were deliberately indifferent to or tacitly authorized such misconduct. Far from describing a "persistent pattern of unconstitutional misconduct," plaintiff's allegations do not adequately describe even a single instance in which a constitutional violation occurred.

Third, plaintiff has not properly alleged that the State of Missouri was deliberately indifferent in failing to train or supervise its employees. To show deliberate indifference, plaintiff must prove that the state "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Typically, this is done by alleging a "pattern of similar constitutional violations by untrained employees." As noted above, plaintiff's facts do not show even a single constitutional violation, let alone a pattern.

Finally, to the extent that plaintiff might seek to hold the State of Missouri liable for the actions of its employees, the Court notes that a governmental entity cannot be held liable under 42 U.S.C. § 1983 simply because it employs a tortfeasor. *See A.H. v. City of St. Louis, Mo.*, 891 F.3d

721, 728 (8ᵗʰ Cir. 2018) ("In an action under § 1983, a [governmental entity]…cannot be liable on a respondeat superior theory").

      For all the reasons discussed above, plaintiff has failed to state official capacity claims against defendants. Therefore, the official capacity claims must be dismissed.

### C.  Plaintiff's Request for Release

      At several points in his filings, plaintiff seeks immediate release from commitment. The Court notes that this request is not properly brought in a 42 U.S.C. § 1983 action. If he wishes to challenge his commitment, that challenge must be brought pursuant to a petition for writ of habeas corpus. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus"). *See also Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (explaining that Supreme Court "has held that a prisoner in state custody cannot use a [42 U.S.C.] § 1983 action to challenge the fact or duration of his confinement"); and *Adams v. Agniel*, 405 F.3d 643, 644-45 (8ᵗʰ Cir. 2005) (explaining that a habeas action is the proper vehicle for a prisoner to challenge the legality of his sentence or seek immediate or speedier release). Therefore, to the extent that plaintiff is seeking release from his commitment to the SORTS program, this action is subject to dismissal.

### D.  Individual Capacity Claims

      Plaintiff has sued all the defendants in their individual capacities. Individual liability in a 42 U.S.C. § 1983 case is personal. *See Frederick v. Motsinger*, 873 F.3d 641, 646 (8ᵗʰ Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8ᵗʰ Cir. 2015). As such, § 1983 liability "requires a causal link

to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

In this case, plaintiff alleges that Director Huhn "is legally responsible for the overall operation of the Department of Mental Health," that Dr. Stanislaus "made the final decision to have [him] force medicated against his religious beliefs," that Chief Operating Officer Hacker "retaliated against [him]" by extending an involuntary medication order, that Dr. Neff "exercised her government religious beliefs upon [him] to help discredit [him]," that Dr. Englehart retaliated against him by "force drugging [him]," and that Dr. Vangala "used witchcraft/hypnosis on [him] to create the illusion that [he] is delusional." None of these broad – and in many instances baseless – allegations demonstrate a causal link between an individual defendant and the violation of plaintiff's constitutional rights. Indeed, as discussed in more detail below, plaintiff has not demonstrated any violation whatsoever of his rights under either the First or Fourteenth Amendments.

### i.   Forced Medication Under the Fourteenth Amendment

As a civilly committed individual, plaintiff is protected by the Fourteenth Amendment. *See Karsjens v. Lourey*, 988 F.3d 1047, 1052 (8th Cir. 2021). In this case, his allegations center on the contention that he is being wrongly force-medicated.

The question as to whether a state may forcibly medicate a prisoner has both substantive and procedural aspects. *See Washington v. Harper*, 494 U.S. 210, 220 (1990). "The substantive issue involves defining the protected constitutional interest, as well as identifying the conditions under which competing interests may outweigh it," while the "procedural issue concerns the minimum process required by the Constitution." *Morgan v. Rabun*, 128 F.3d 694, 696 (8th Cir. 1997). In other words, "the substantive issue is what factual circumstances must exist before the State may administer antipsychotic drugs to the prisoner against his will; the procedural issue is whether the State's nonjudicial mechanisms used to determine the facts in a particular case are sufficient." *Harper*, 494 U.S. at 220.

With regard to the substantive component, the Due Process Clause of the Fourteenth Amendment gives an individual "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs." *Id.* at 221-22. As such, the state is permitted to treat a seriously mentally ill inmate with antipsychotic drugs against his will if the inmate is a danger to himself or others, and the treatment is in the inmate's medical interests. *Id.* at 227. *See also Morgan*, 128 F.3d at 697 (explaining that with regard to substantive due process, a committed individual's due process rights are not violated if he is a danger to himself or others).

An inmate may also be forcibly medicated "if he (1) suffers from a mental disorder and (2) is gravely disabled," which includes "severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety." *Green v. Dormire*, 691 F.3d 917, 923 (8th Cir. 2012) (determining that Missouri policy providing for forced medication of a "gravely disabled" inmate comported with substantive due process).

Allegations that forced medication was not in an individual's best interest may support a claim under 42 U.S.C. § 1983. *See Thomas v. Eschen*, 928 F.3d 709, 713 (8th Cir. 2019) (explaining that if state officials force a civilly committed individual to take drugs having no connection to his mental illness, or intentionally injure him while treating him, the individual may have a viable claim for damages under § 1983). However, more than "threadbare allegations" are required to support a claim. *Id*. at 714 (noting that plaintiff's claim that he had been "medicated" for the "wrong reasons" did not demonstrate "what, when, where, why, or how [the] drugs were administered").

To meet the procedural requirements of Due Process in the involuntary administration of antipsychotic drugs to a prisoner, there must be: (1) notice; (2) the right to be present at an adversarial hearing; (3) the right to present witnesses; and (4) the right to cross-examine witnesses. *See Harper*, 494 U.S. at 235. *See also Doby v. Hickerson*, 120 F.3d 111, 113 (8th Cir. 1997) (explaining that the "minimal constitutional requirements for satisfying procedural due process when a state involuntarily administers antipsychotics to a prisoner" consists of "an independent decisionmaker as well as for notice, the right to be present at an adversary hearing, and the right to present and cross-examine witnesses"); A judicial hearing is not required, and the hearing may be adjudicated by non-treating medical personnel. *Harper*, 494 U.S. at 231.

Though *Harper* dealt with a prison inmate, the same factors have been applied to civilly committed individuals who have been forcibly medicated. *See Morgan*, 128 F.3d at 696-97 (applying *Harper* factors to an individual committed to the Missouri Department of Mental Health). That is, the "governmental interests in running a state mental hospital are similar in material aspects to that of running a prison," as the state has "a vital interest in ensuring the safety of their staff, other patients, and of course in ensuring the patients' own safety." *Id*. at 697.

In this case, plaintiff has not alleged either a substantive or procedural violation of the Fourteenth Amendment. With regard to the substantive component, plaintiff presents no facts showing that he does not suffer from a mental illness, and that he is not a danger to himself or others, or gravely disabled. Instead of addressing these issues, plaintiff's allegations are framed as either an infringement on his First Amendment rights, or as retaliation. As to the procedural component, plaintiff never alleges that he was denied (1) notice; (2) the right to be present at an adversarial hearing; (3) the right to present witnesses; and (4) the right to cross-examine witnesses. For these reasons, plaintiff has failed to state a claim against defendants under the Fourteenth Amendment.

    **ii.**    **Free Exercise Claim Under the First Amendment**

The First Amendment to the United States Constitution provides, in relevant part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof…" U.S. Const. amend. I. Pursuant to the Free Exercise Clause, an individual has the right to believe and profess whatever religious doctrine he or she desires. *In re Kemp*, 894 F.3d 900, 907 (8th Cir. 2018). Moreover, the government may not compel religious belief, punish the expression of religious doctrines, impose special disabilities based on religious views or religious status, or lend its power to a particular side in controversies over religious authority or dogma. *Id*.

Under the Free Exercise Clause, a plaintiff must first raise a question of fact regarding whether a substantial burden has been placed on his ability to practice his religion. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008). *See also Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997) (stating that "[a]s an initial matter, a person claiming that a governmental policy or action violates his right to exercise his religion freely must establish that the action substantially burdens his sincerely held religious belief"). "To constitute a substantial burden, the government

policy or actions must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion." *Murphy v. Missouri Dep't of Corrs.*, 372 F.3d 979, 988 (8th Cir. 2004).

In this case, plaintiff has not alleged any facts showing that defendants substantially burdened his sincerely held religious beliefs. More to the point, aside from conclusory assertions regarding his First Amendment rights, and a repeated insistence that the court system is run by "Jews, Freemasons, and physicians," he makes no effort to describe the contours of his beliefs, or what those beliefs require of him. For example, plaintiff has not presented facts establishing that defendants inhibited or constrained conduct or expression manifesting some central tenet of his beliefs; he has not shown that defendants meaningfully curtailed his ability to express adherence to his faith; and he has not demonstrated that defendants denied him the opportunity to engage in activities fundamental to his religion. Specifically, he does not assert that his sincerely held religious beliefs do not allow him to be medicated, and that forced medication is therefore infringing on his right to practice his religion.

Rather than describe his own beliefs, the Court notes that plaintiff's complaint, attachments, and supplements all focus on the purported religious beliefs of defendants. In particular, he accuses defendants of belonging to a religion devoted to the "Sun God Apollo[,] who is also called Baal/Lucifer/Satan/the Devil," contends that physicians are actually sorcerers, and argues that defendants are imposing those beliefs on him. Not only do these allegations fail to demonstrate the infringement of his own religious beliefs, they are factually frivolous, having no basis in law or fact. *See Denton v. Hernandez*, 504 U.S. 25, 32 (1992) ("[A] finding of factual

22

frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them").

For these reasons, plaintiff has failed to state a claim against defendants for infringing on his First Amendment right to freely exercise his religion.

### iii.   Retaliation Claim Under the First Amendment

As a general matter, the First Amendment prohibits government officials from retaliating against an individual for speaking out. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006). In order to prevail on a First Amendment retaliation claim, a plaintiff "must show that [he] engaged in protected activity, that the [defendant's] actions caused an injury to the [plaintiff] that would chill a person of ordinary firmness from continuing to engage in the activity, and that a causal connection exists between the retaliatory animus and the injury." *Small v. McChrystal*, 708 F.3d 997, 1008 (8th Cir. 2013).

Retaliation does not need to be the "sole motive" in taking an action against the plaintiff, but it must have been a "substantial factor" in the decision. *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007). Furthermore, the plaintiff must demonstrate that the retaliatory motive was a "but-for" cause of the action. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010). *See also Osborne v. Grussing*, 477 F.3d 1002, 1006 (8th Cir. 2007) (explaining that "[i]f there is a finding that retaliation was not the but-for cause…the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind"). That is, plaintiff must show that he was "singled out" because of his exercise of constitutional rights. *Baribeau*, 596 F.3d at 481. *See also Bernini v. City of St. Paul*, 665 F.3d 997, 1007 (8th Cir. 2012) (stating that to establish a causal connection, the plaintiff must show that he was "singled out" because of his exercise of constitutional rights).

In this case, plaintiff alleges that Dr. Englehart and Dr. Vangala forcibly medicated him in retaliation for speaking "the truth" about how witchcraft had been "used to create sex offenders," and about how the system was run by "the Freemasons, Jews/Israelites, and physicians" who were "followers of the Sun God/Satan." With regard to defendants Huhn, Hacker, Stanislaus, and Neff, he suggests that they extended the order for forced medication because of his lawsuits, which threatened to expose "them as Satan worshippers/witches."

Even assuming that plaintiff engaged in a protected activity, and that defendants' actions in forcibly medicating him caused him an injury, he has presented absolutely no facts showing a causal connection between the two. That is, he asserts no facts supporting the proposition that defendants' fear of being exposed as "Satan worshippers/witches" in court constituted a "substantial factor" in the forced medication decision. To the contrary, in a grievance submitted by plaintiff, the committee states that "the clinical due process hearing is required every 6 months regardless of [plaintiff's] interactions with the court system," and that the "facility feels like the enforced medication is advantageous to [plaintiff's] therapy." (Docket No. 7 at 2).

There are no factual allegations in plaintiff's filings to indicate that he was forcibly medicated for an improper purpose, or that he was singled out for exercising his rights. Instead, he simply states that retaliation occurred, without buttressing that position in any way. The Court is not required to accept his legal conclusions, nor is the recitation of a cause of action sufficient to state a claim. *See Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) (explaining that "[a] pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice").

For these reasons, plaintiff has failed to state a claim against defendants for retaliating against him for the exercise of his First Amendment rights.

24

**E.  Motions to Appoint Counsel**

Plaintiff has filed three separate motions to appoint counsel. (Docket No. 6; Docket No. 9; Docket No. 14). The motions will be denied as moot as this action is being dismissed without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

**F.  Motion to Include Information**

Plaintiff has filed a motion to include additional information in his complaint. (Docket No. 16). In the motion, he states that he just recently learned about the "opinion" in *State of Missouri v. Kennemore*, 941 S.W.2d 764 (Mo. App. 1997), in which he challenged the sufficiency of the evidence in his conviction for a third-degree misdemeanor. The Court of Appeals affirmed the conviction, though plaintiff asserts that the order corrects "the wrong done to [him]." This information is not relevant to the allegations contained in plaintiff's numerous filings. In any event, the motion will be denied as moot as this case is being dismissed without prejudice for the reasons discussed above.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 4) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motions for appointment of counsel (Docket No. 6; Docket No. 9; Docket No. 14) are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that plaintiff's motion to include additional information (Docket No. 16) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

_Patricia L. Cohen_
_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of April, 2022